I would please the court, my name is Peter Suska and I represent Mr. Pablo Rendon Ojeda and through my remarks this morning I refer to him as Pablo. The principal issue in this court is whether Pablo should have been granted a re-return order in accordance with the mandate issued by this court, I believe in January of this year, which instructed the district judge to first vacate the district court's return order and then dismiss the mother's, Michelle's, petition. Common sense dictates that Pablo earned the right deserved. Where did that get you? What if the motion to vacate had been ordered, the child is still in Mexico with his mother, so where does that get you? Well, it gives Pablo, it would have given Pablo, Judge Owen, an order restoring the right, reaffirming his custodial rights that had been granted to him by a unanimous verdict, jury verdict in Montgomery County and it gave him potentially the right to at some point in time enforce the order. A clear . . . I'm struggling with seeing the difference between dismissing, which it seems to me would inherently vacate the order and explicitly vacating the order. I thought what you wanted was a directive from the district court to the mother. We requested a specific re-return order in the spirit of really two cases, Chafin as well as Larbee. Did y'all tell the district court about Larbee? Did you have an . . . on the re-hearing, it's the idea that if it's the district court's decision that has been vacated, that has allowed the child to be . . . because at the time, the only reason the child went, the child wouldn't have been there with the mother in Mexico, but for the district court's prior vacated, the order that was wrong. So did y'all say, well, Larbee says we have a right to re-return. Did y'all make that argument in the district? I know it happened really quickly, but was that made at least on the re-urging that Larbee says we get the re-return? In the motion filed under Rule 59E, Judge O'Rourke, I don't recall if we specifically mentioned Larbee, but clearly the argument was made, but I do think we also pointed out to the court the decision in Chafin, whereby the Supreme Court specifically affirmed the right to a re-return order in Hague litigation where a determination of habitual residence has been reversed. Because it was the district court's prior decision that got this off the rails regarding where the placement of the child was. Well, a lot of . . . yes. There were a lot of other things, too, in the meeting. And among which, respectfully, we have a district court judge who, as soon as he receives the mandate, defiantly refuses to implement the mandate and recuses himself. And the case is then reassigned to a new district judge whose, I think we can agree, whose prior knowledge and experience with the factual underpinnings of the case were far less than that of the trial judge who tried the case. There are three points that I'd like to address that I think really justify the request for the reversal of the dismissal order, and those points are this. I don't think I need to define to the court what a vacator means. In this case, this court's vacator was unqualified without limitation. This court said the dismissal order or the return order signed by Judge Hoyt was to be vacated and then the case dismissed. Pablo has no quarrel, had no quarrel with the majority opinion of this court. It vindicated him. But . . . Unfortunately . . . He didn't end up any better off except . . . He was the loser. I would submit he was the de facto loser. Except for the fact that he doesn't have to pay those fees now, I assume, that he doesn't end up any better off as a result of winning in the Fifth Circuit. Judge Elrod, I would submit that he was the de facto loser because at the time this case was tried in the Southern District of Texas, he had possession of that child. The direct effect of the district court's order was to separate him from his son, what he was entitled to. Did you ask for that when you were last? Yes. I'm sorry. When you were in this court last, did you ask for . . . affirmatively ask for an order to return the child? Both in my briefing as well as my argument to this court, Judge. You had argued that to the prior panel? I'm sorry? You argued that to the panel that reversed this? Yes, sir. But they didn't say that in their order, in opinion or order? Well, they said the order is vacated and the petition should be dismissed. Now, by way of analogy, in Larbee, where both myself and counsel were involved . . . The status quo would be the status quo prior to the order of the district court that this court vacated. Correct. Which the child would have been with the dad. Why is that just simply implicit in what this panel did? I thought the status quo would be preserved. Correct. But he didn't preserve the status quo if the court doesn't return the child to the dad. He did not. And that, again, is exemplified by the Larbee case because in this court's decision in Larbee, in its concluding remarks, this court said, we vacate the order of the district court and enter a judgment in Derrick's favor. Derrick was Mr. Larbee, who was kind of in the same position as Pablo. Like the mandate in this case. Well, staying within the dimensions of the Hague issue, the court could not determine the proper placement of the child as between the competing parents. However, that's not what you do when you maintain the status quo. That is a neutral position. You don't say, well, we have vacated the determination of habitual habitation, et cetera, and you're back to the status quo. That ought to be implicit in the order itself. Is that right? Respectfully, I would disagree. I don't think it's implicitly there. And even if it's implicitly there, what is another court to make of the dismissal order signed by the district judge? He's saying, isn't the status quo to go back to with the dad? I thought that was Judge Higginbotham's question. And I understood that, yes. The answer is yes. That's what the status quo should have been restored to. But if you look at Larbee, where this court made essentially the same type of order and vacator, when the district judge in the Western District of Texas received the mandate, he knew exactly what to do, because he had separated Mr. Larbee from his son in his earlier order. And once he was instructed by this court that he had made an error, his order said, I have to give full effect to the mandate of this court, and I am ordering that the child be returned to the father. Even though the child — I'm sorry. This is why the district court didn't consider what had been done in Larbee and say, I need to do a similar order like Larbee. I don't understand why there's nothing in the record to indicate that the district court even considered a Larbee order. I don't understand that. That's not necessarily an unfriendly question. Maybe . . . I think it's an appropriate question, Judge Elrod. Again, I believe that the argument was adequately set forth in our motion under Rule 59E, but it all happened very quickly. We had no . . . I must say, if I just got this opinion and I read it, it says, you know, we can't decide the merits. There isn't a domicile chosen by the parents. We sure hope these parents will quit fussing. We vacate what the district court didn't dismiss, and I would have read that as leaving the parties to the Texas and Mexico courts to keep duking it out. I mean . . . Yeah. Go ahead. That's what I would have done. I mean, because both the dissent and the majority has apologized, and we're sorry we can't give the child the certainty that he deserves, but we don't . . . She failed in her burden, and so we vacate the district courts out of it, let them go back to Mexico and Texas and keep fighting. I mean, that's what I would have done. Stepping back to where I was when I stood here eight or nine months ago and argued the first appeal before this court, there was no doubt that there was a good deal of between these two parents, and I certainly don't support that. However, Ms. Pablo was still entitled to typical appellate release. Well, if the district court doesn't have jurisdiction and you have to dismiss, I don't see how . . . I see vacating the order that he originally entered. I don't see where the district court has any further authority once the case is dismissed to make any further orders, other than to vacate what he did. She vacated what he did. I don't see once it's dismissed that the district court has jurisdiction to do anything else. I think Chafin makes clear that upon remand, the district court has an obligation to give proper effect to the mandate of this court, and there is still jurisdiction of the district court to correct what it did incorrectly. The other point that I think is very important is that there is no requirement under the convention that the child could not or should not have been returned to Pablo because there was no determination made as to the habitual residence of the child. The two authoritative sources that are cited, both the legal analysis and text of the Perez-Vera report, contemplate circumstances where the petitioning party or parent may move to a location different from the habitual residence of the child. Both of those authoritative sources support the notion that in those instances, the petitioning, the child should be returned to the petitioning parent wherever the petitioning parent may be residing. In this case, at the time this case was previously argued and subsequent to the trial court's initial order, both parents were in Mexico. Returning the child to Pablo would have not created any upheaval. I should remind the court that, again, regardless of where Pablo was living subsequent to this adverse order, he had been accorded the exclusive right to determine the residence of the child by the state district court. What is the status of all the other litigation now that we've had eight months? I'm going to ask you, is the state district court of Texas's order that the mom is still eligible for contempt and that she's not complied with the passport rules, is all of that still in effect? And if she came back, that she would get brought in because she submitted to the jurisdiction of that court by going to Texas to live there? All of those orders are still in effect and bonding. Is the dad still under possible criminal contempt in Mexican court? It is my understanding, Judge Alvarado, that all of that has been resolved in a favorable way to him. He is eligible to return to the United States. Why are we here? Excuse me? Why are we here if it's been resolved favorable to him? We're here because we don't believe that he has been accorded the justice that he deserves, and that is an explicit return order, re-return order, in the spirit of Larbee. But is he having access to the child now? He has no access to the child. I'm sorry, I misunderstood. He doesn't have access to the child since 2012 because of the district court's order? He has not seen the child since the day after the memorandum opinion by the district judge in January of 2013, and our motion under Rule 59E contained a declaration from Pablo saying, I have not seen my child since the day that I complied with the district judge's order. So it's the district court judge's order that was vacated that has kept him from being able to see his child because he both has a right to see his child under Mexican and the Texas order both say that he has a right, right? Or does the Mexican not give him right? The Texas one absolutely gives him primary right to control the comings and going of the child and to see the child. To answer your previous question as to what's the status of litigation, there's been no further litigation in the United States other than Michelle's appealing the decision or filing an application for writ to the U.S. Supreme Court. Of this court's prior opinion, that application was denied. My understanding of what's gone on in Mexico is that everything has been resolved favorably to Pablo. If it's been resolved favorably, why doesn't he have access to the child? Because Michelle is still attempting to prevent the recordation of the American birth certificate in Mexico. She was ordered to do that. She has never done it, Judge Elrod. So she's disputing paternity still even though she admitted paternity and was ordered to do that. That is absolutely correct and because of that, under Mexican law, Pablo is recognized as basically being a stranger to the child. But he's not being sought in criminal contempt anymore. Correct. That's what you mean by resolution? Yes. May it please the court, my name is Ashley Tomlinson and I'm present today on behalf of the appellee, Michelle Berezovsky. Is that true that he's been kept from seeing the child since 2012? My understanding is that Mr. Rendon non-suited his paternity suit in Mexico and the result of his, the lack of orders granting him possession in Mexico is that he moved to dismiss his paternity suit in Mexico, which would have granted him paternity rights. But didn't he have to have a paternity suit when there was already an order that said that he had to, she had to acknowledge his paternity and she had done so in a court of law? As the Mexican court directed to him, he never made any motion to domesticate the Texas order in Mexico. And the 24th court in Mexico City told him, you have not done this, this is what's necessary for us to recognize the Texas order. Inexplicably, he failed to do so. Okay, so that still doesn't tell us why he's not had access since 2012. I can't tell you why other than the parties have followed the orders of the Mexican court and the reason that he does not have a possession order... They're not orders of the Texas court. They're not, because he has not registered those in Mexico. There are procedures for registration in Mexico and if he follows those procedures, that order would have become enforceable. He did not do that and he dismissed his paternity suit in Mexico. That was a move that my client objected to. There's no real reason, though, that he doesn't have access to his child since 2012, though. Is there? I don't know what other real reason is other than that. And this court took him... This court facilitated that process, didn't it? The district court facilitated the fact that he has not had access since 2012. The district court found that Mexico was the habitual residence and ordered the child to return. And this court found in the prior panel that that was erroneous, but however, any procedures for enforcement of custody rights are specifically excluded from the scope of the convention. That's what the authority tells us. That's what the explanatory report authored by the Hague Conference tells us. He has not sought those enforcement procedures in Mexico since 2013. Chafin allowed a re-return. And I would argue, Your Honor, that Mr. Rendon's reliance on Chafin is misplaced. Chafin does not guarantee a right of re-return. But he gave a re-return, allowed it to stand. What the Chafin court said, what Chafin said is that the possibility of re-return under the convention or under inherent equitable authority is not so implausible as to deprive the court of jurisdiction, but it's up to the lower courts to decide whether there is a re-return. So the lower courts had a right to decide if there should be a re-return here, just as they ordered a re-return in Larbee. And, Your Honor, I would argue that this case is distinguishable. The Chafin, in Chafin, the Supreme Court explicitly made their... the right to re-return contingent upon a finding that the United States is the habitual residence of the child. And the last known habitual residence of this child is Texas, according to the last valid court order. This... what this court said in its prior opinion was that, uh, they would decline to determine whether the child was... The court said it didn't need to reach that issue because all it had to do was determine, for the purposes of this case, that, um, of this appeal, that Mexico was not the agreed habitual residence. But it did not undo the fact that the Texas court had already determined, and even on remand, uh, the district court now could consider whether Texas was the habitual residence or whether the managing... the primary conservator parent had moved the habitual residence. So these are all things that the district court could still analyze. And... and on your first point... on your first point, Your Honor, I would point out that the... the district court, after the prior panel vacated the district court's judgment, there was no finding of habitual residence. That judgment no longer existed, so there was no determination as to habitual residence and whether Texas... And that should be litigated... If... if you're gonna argue that a Larbee order should not be obtained, then you will have to go to the district court and say, Larbee doesn't apply here because, um, Texas is not the habitual residence anymore. And they can say, well, we think it still is. And then the district court should have to issue some sort of reasoning that... of why a re-return is appropriate or not appropriate. Whereas the district court hasn't done any analysis of re-return in this case. And my argument would be, Your Honor, in response, is that the district court had an opinion stating vacate and dismiss. In the... and there was nothing else in the opinion other than what Judge Owen noted earlier, that the prior panel declined to make a determination of custody or to provide a resolution. But that's what Larbee had, too. With due respect, I'm just sitting here reading what the prior panel opinion said. It says the child did not have a habitual residence. It says the mother has not met her burden in proving that she and Rendon shared an intent or settled purpose regarding their child's habitual residence. Indeed, it does not appear that Berezowski... I can't pronounce her name. And Rendon have shared any intention or settled purpose regarding their child's since birth. I read that to mean no habitual residence, go hence with that day. I mean, I thought it said not that it's Texas, not that it's Mexico, that there is no habitual residence. And I think it was entirely reasonable for the district court to have reached that same interpretation. But it notably... It said they need not determine whether it does and that it's possible for a child not to have a habitual residence. But then it says that they didn't have... It goes ahead and decides. It says there isn't one. Right here. I don't know how else to read that. Right there. I've got it, too. I know you wrote it, but I'm just looking at what you wrote. I wrote it, and I don't think it says that. I hear you. And, Your Honor, unfortunately, the district court did not have the benefit of being able to stand in front of you today and question you about it. Our position is... She didn't do any analysis whatsoever. So we don't know if this was why she didn't do it or not. Why didn't she just abuse her to analyze the issue at all? There was no... There was no instructions to determine what was the habitual residence. There was no instruction to consider the possibility of a re-return. They didn't have those instructions in Larbee, either, and Judge Garcia knew exactly what to do. And I would suggest that... Yes, Your Honor. What do you think the issue before this court is? I think the issue before this court is, first, whether the district court properly interpreted the prior panel's mandate, and, second, whether there was... whether inherent equitable authority under Chafin was required the district court to order a re-return or to order the prior panel to order a re-return. Our position is that Chafin, in all of its progeny, the 7th Circuit and the 9th Circuit and this circuit, all of those cases only stand for the possibility of re-return when there's a finding that the United States is a... What are the choices that this court has before it? What is our decisional range? What can we do, in your view? Our position would... First position would be that this court should uphold the district court's dismissal order, which we believe followed the explicit instructions of the prior panel. Or, this court could remand for determination of habitual residence. If this panel does... Can we ask the other panel to consider whether to withdraw their mandate? Can we ask the prior panel to consider whether to withdraw and modify their mandate and let them decide what they meant? I would argue that the past. There is... The purpose of the 59E motion, which was filed, is to bring an end to litigation. And, there has been for some reason an inexplicable delay on Mr. Rendon's part in seeking enforcement in Mexico, which is the procedure that the Hague Convention contemplates. And that's what all the authority directs parties to do. It says that the convention is not meant to serve as an enforcement mechanism. The 59E motion and the district court's order properly brought an end to this litigation, which is what it's intended to do, and allow the court allow the parties to follow the proper procedures for enforcement under the family law courts in Texas or Mexico. Because the mandate rule and all of its application require and the purpose of that rule is to bring an end to litigation. How long does this court have to withdraw its mandate, do you think? How long do you think this court has to withdraw its mandate or modify its mandate on its own motion? I think at this point, the court has the authority to withdraw its mandate. I'm sorry? I'm sorry, Your Honor. I think the court has the authority to reform its mandate. The question is whether there is a manifest injustice that requires this court to reform its mandate. Mr. Rendon did not seek a clarification. He did not seek a rehearing. He did not seek a modification. And he has not asked to expedite this appeal even though... But why should he have had to seek a clarification if he had argued Larbee and your firm had done it too? Y'all knew what Larbee said. Or did your firm not do it? He said y'all did. Maybe that's wrong. We were trial counsel, Your Honor. We were not the appellate counsel. But when it went back to Judge Garcia, did y'all handle that? No, we did not. We did not. Again, our position is that Larbee is distinguishable. There was a finding in Larbee, an explicit finding in Larbee that Texas was the habitual residence. That guidance was not given to the district court in this case. And there was also an instruction in Larbee to render judgment in Mr. Larbee's favor and with a final note saying that the exigency of this case mandated that the timeline for filing a motion for rehearing should be shortened. Signaling to the district court that this court thought that the child should be returned sooner than later. Those signals were not present in the case. Could I ask you if you were not correct that it is crystal clear that we did not intend to not re-return, if it's not crystal clear that we didn't intend, why shouldn't the district court have undertaken some sort of analysis so as not to abuse its discretion? Even if the district court ultimately agreed with you on the Texas, whether Texas is a habitual residence point and said that was a distinguishing factor between this case and Larbee, why didn't the court abuse if it's not crystal clear, shouldn't it have had a responsibility to do some sort of analysis? It might agree with you and say our opinion doesn't say Texas is and that's a distinguished point and that's good enough. Because the instructions from the prior panel were to vacate and dismiss. But at the same time don't they need to do something to consider the arguments? Shouldn't you analyze the arguments because that was the same instruction basically as Larbee. Even the actual instruction. The instruction in Larbee was to render judgment in his favor. In this case it was to vacate and dismiss and there was no indication given to the district court that it should have undertaken further consideration and I would argue that the court district court would have arguably abused its discretion in doing anything other than following the explicit instructions of this court because the mandate rule says It was explicit. My premise of my question is if it's vague. If it's vague I think there is a responsibility to do analysis. If it's explicit perhaps you're right. I believe that the district court in this case followed verbatim the order for vacate and dismissal and notably in his 59E motion that Mr. Rendon filed in the district court he stated quote that it is in compliance that the dismissal order is in compliance with the United States Court of Appeals mandate. One quick question about going back to the prior appeal outset when the district court entered its original order then as I understand what you told us the child then probably gave up the child and the child returned to Mexico was any application for a stay pending appeal I don't understand it appears to me that the parties on their own made this decision to take the child back to Mexico no one ordered him to do that is that correct? There was an order from the district court that the child returned in standard to Mexico. Oh okay the district court ordered that now what application for a stay of that order was made? There was an application for the stay in the district court that was denied and the there was no stay filed to this court. But the court of appeals wasn't asked to stay? No it was not. No one asked the panel to stay to avoid the situation you're now in. Correct and again our position is that enforcement is within the scope of the family law courts of the respective countries and Mr. Rendon is now arguing manifest injustice even though he has not taken the steps to enforce any since the return of the child to Mexico in 2013. He has taken substantial steps to enforce the custody orders and if your client were to come back to Montgomery County she could be brought in for contempt still is that not true? Has that been vacated? I do not know the exact status of that order your honor your co-counsel saying no that's not true but it's my understanding that that there were a number of outstanding things that your client was in violation of and that she was in problems with Montgomery County and that this was the court had found that she had not complied with the Montgomery County orders and there was that finding again our client's contention was that and she maintains that she wasn't properly served under the Hague service convention and those proceedings and the court of appeals in Texas found that not they found the jurisdiction over that and she did not win her mandamus or whatever that she sought. The court of appeals in the state custody case found that there was initial jurisdiction which is separate from continuing exclusive jurisdiction under the UCCJEA. Texas maintains initial jurisdiction as the home state of the child as long as the home state the child was residing in Texas as its home state within six months of the commencement of a suit. The child left Texas in October of 2011. Texas would have maintained initial jurisdiction until April of 2012. That was the only issue that the Texas appellate court considered was initial jurisdiction. Under section 152 202 and 203 of the Texas family code Texas would lose jurisdiction if there is a finding by either the Texas court or a court of another state that all the parties resided in Mexico. Those findings have been made by the Mexican court since August of 2012. Therefore under Texas law Texas has lost continuing exclusive jurisdiction to modify. The Texas court of appeals opinion was a retrospective analysis of initial jurisdiction. It had nothing to do with continuing exclusive jurisdiction to modify. On that point the state department in its brief and chafin maintains that when the parties live in the same country together, when they live in the country where the child is alleged to be wrongfully withheld, then the re-return remedy is moot. Okay, well how does that make sense with the indeed the 410th district court of Texas issued a clarifying order in February 2012 explaining that the Texas order is a valid existing final enforceable order and the matter of the primary custody of the child PRB is raised judicata and that unless and until an appellate court reversed the Texas order that it would remain both final and enforceable. And that is I would maintain your honor that that is a separate issue as to the finality of the order. Whether it's a final order under Texas law is a separate issue as to whether Texas would maintain continuing exclusive jurisdiction in the future because under Texas law, the statute itself contemplates and anticipates that when everyone moves away Texas loses jurisdiction and the other state where everyone lives has the authority, the exclusive authority to issue future custody orders. There's nothing that this court can do to encourage the parties to cooperate and quit this 12 lawsuits, 13 lawsuits whatever it is now. Is that true? I don't know what is going to bring resolution your honor but my response would be that there is an enforcement remedy available to Mr. Rendon in Mexico and that is the authority. But she's continuing to deny his paternity even though she did not deny his paternity. She objected to his withdrawal of the paternity suit. That went up to the Mexican court. She objected to him dismissing his paternity suit. She wished for that to go forward. He then when the Mexican court agreed with our client and said we're not going to dismiss your paternity suit Mr. Rendon took that up to the constitutional court in Mexico. So had he moved forward with the recommendations of the Mexican court and followed what the Mexican court said their law requires as far as domesticating the Texas order and establishing paternity he would not be in the position he is now. He has created the situation for himself for some reason and since the child has returned he has not filed any subsequent motions to enforce his custody rights. Instead he's asking this court to prolong the litigation in this case and to use the convention for something that it's not designed for which is as an enforcement mechanism. Did he get the fees vacated? Yes that was vacated. Yes your honor. And if the panel has no further questions thank you. Let me first address a question that Judge Higginbottom posed a moment ago and that is the issue of the stay. I was not trial counsel for Pablo in the lower court but it's my understanding at the proceeding and the announcement by Judge Hoyt that was adverse to Pablo the motion to stay was presented and denied. Let me clarify the direction of my question were toward the question of what the status quo ante was and for obvious relevance as to where we are  from the response of counsel opposite that the status quo ante is that the child was in Mexico. No. The status quo prior to that was that Pablo had the child in Texas. No stay was requested to this court. I think that that is correct Judge. I think the reason for that is twofold. There was somewhat of a time lag between but but it's not a matter of fault and I don't fault anybody in this complicated battle that's going on and on. I'm just saying that in terms of the narrow naked legal question it's difficult for me to say that the status quo ante here was that the child was sent back to Mexico and I have to say that it's voluntary when you don't seek a stay of the party doing it. You didn't do it but there you are. I'm sorry. Has he resided in Mexico since 2012? Yes. Yes ma'am. Getting back to this point quickly, it is my understanding that on January 15th of 2012 2013 excuse me, the day after the trial court entered the return order in favor of the mother, mother and child immediately left for the trial court ordered that the child be returned to Mexico in Stanter and ordered that passports be turned over to the mother from father to facilitate her removal. So even if a day or two or three days later a stay had been filed in this court, it would have done no good which underscores I assure you that first off that it doesn't take long to email we get those stay applications very quickly and under our processes they would have been in the hands of a judge who would have preempted things and issued it or one way or another ruled on it I don't know what they would have done. I understand the difficulties of it but that's what's happened. The fact that mother left for Mexico immediately underscores the injustice of the dismissal order as worded by the reassigned trial judge because when she entered the order she had every reason to understand and know that the child had already gone to Mexico. The only way that she was going to be able to effectively undo the effects of this court's vacator she clearly wasn't and upon remand the mandate of this court upon remand was that the trial judge was to conduct all further proceedings in accordance with the opinion of this court and it's apparent that the reassigned which was an unqualified unlimited vacator there was not a hint in the opinion of the court that they did not intend to have the return order reversed. I will just say this in conclusion. It vacated the return order. It told the district court to vacate the return order which she did and then dismiss the case. Not in an entirely effective way. I will close by saying this. As the father of three children if I had lost one under these circumstances where I had to litigate to be reunited with my son or daughter obtain an order from this court vindicating me and not being able to be reunited with my child no greater manifest injustice in the world. There is an anomaly here. At this point the current reality on the ground today is that Michelle is the de facto winner. She has retained the child. A lot of water has been under the bridge in Mexico too but we have your argument counsel. Thank you.